```
                  IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY

                                - - -

ACTELION PHARMACEUTICALS      :  CIVIL ACTION NO. 12-5743
LTD., et al.,                 :
            Plaintiffs         :
                              :
        v.                    :  Camden, New Jersey
                              :  March 12, 2013
APOTEX INC., et al.,          :  10:06 o'clock a.m.
            Defendants         :
. . . . . . . . . . . . . . . .

                  HEARING ON MOTION TO STAY
            BEFORE THE HONORABLE ANN MARIE DONIO
             UNITED STATES DISTRICT COURT JUDGE

                                - - -

APPEARANCES:

For the Plaintiffs:       GEORGE GORDON, ESQUIRE
                          MICHELLE HART YEARY, ESQUIRE
                          CAROLYN BUDZINSKI, ESQUIRE
                          DAVID CAROLINE, ESQUIRE
                          Dechert LLP
                          902 Carnegie Center, Suite 500
                          Princeton, NJ   08540-6531


For the Defendant         MICHAEL A. SHAPIRO, ESQUIRE
Apotex:                   Bazelon Less & Feldman, PC
                          1515 Market Street, Suite 700
                          Philadelphia, PA   19102-1907

                          AITAN GOELMAN, ESQUIRE
                          PAUL HYNES, ESQUIRE
                          Zuckerman Spaeder LLP
                          1800 M Street, NW, Suite 1000
                          Washington, DC   20036-5807

                  Laws Transcription Service
                    48 W. LaCrosse Avenue
                     Lansdowne, PA 19050
                       (610)623-4178
```

2

```
For the Defendant          AMANDA REEVES, ESQUIRE
Actavis Elizabeth:         Latham & Watkins, LLP
                           555 Eleventh Street, NW
                           Suite 1000
                           Washington, DC  20004-1304


APPEARANCES:   (Continued)

For the Defendant          JASON B. LATTIMORE, ESQUIRE
Actavis Elizabeth:         Law Office of Jason B. Lattimore
                           55 Madison Avenue, Suite 400
                           Mooristown, NJ   07960


For the Defendant          EUNNICE EUN, ESQUIRE
Roxane Laboratories:       Kirkland & Ellis
                           655 Fifteenth, NW
                           Washington, DC   20005-5793

                           CHARLES J. FALLETTA, ESQUIRE
                           Sills Cummis & Gross
                           One Riverfront Plaza
                           Newark, NJ   07102

                           - - -

Courtroom Deputy/ESR:  Susan Bush

Transcribed by:        Tracey J. Williams, CET

(Proceedings recorded by Liberty Court Player digital sound
recording; transcript produced by AAERT-certified
transcriber.)

                           - - -
```

1           (The following occurred in open court at 10:06

2      o'clock a.m.:)

3           THE COURT:  We are here on the record for a hearing

4      on a motion to stay in Case Number 12-5743.  This hearing and

5      argument is being electronically recorded.  I would ask that

6      each time you speak you identify yourself for the record.

7           We'll begin by having the attorneys place their

8      appearances on the record, beginning with plaintiffs'

9      counsel.

10          MR. GORDON:  Good morning, George Gordon from

11     Dechert LLP for Actelion Pharmaceuticals Limited and Actelion

12     Clinical Research.

13          THE COURT:  All right, thank you.

14          MS. YEARY:  Michelle Yeary, also from Dechert, for

15     Actelion Pharmaceuticals and Actelion Limited.

16          THE COURT:  Anyone else from plaintiff?

17          MS. BUDZINSKI:  Carolyn Budzinski for Actelion.

18          MR. CAROLINE:  And David Caroline from Dechert for

19     Actelion.

20          THE COURT:  All right, thank you.

21          Okay, for defendants?

22          MR. GOELMAN:  Good morning, your Honor, Aitan

23     Goelman from Zuckerman Spaeder for Apotex.  With me at

24     counsel table is Paul Hynes from Zuckerman Spaeder and with

25     us in court is local counsel, Michael Shapiro of Bazelon Less

4

1  & Feldman, also for Apotex.

2           THE COURT:  Thank you.

3           MS. REEVES:  Amanda Reeves, Latham & Watkins, on

4  behalf of Actavis Elizabeth.  With me also is our local

5  counsel, Jason Lattimore of the Lattimore Law Firm.

6           THE COURT:  All right, thank you.

7           MS. EUN:  Good morning, your Honor, Eunnice Eun from

8  Kirkland & Ellis for Roxane, and with me today is our local

9  counsel, Charles Falletta.

10          THE COURT:  All right.  Welcome, everyone.

11          All right.  This is the plaintiffs' motion to stay

12 discovery pending resolution of a dispositive motion

13 presently before the District Court, and that's a motion for

14 judgment on the pleadings.  I have reviewed the submissions

15 and I'm ready to hear any additional argument, and we'll

16 begin with plaintiffs' counsel.

17          MR. GORDON:  Thank you, your Honor.

18          THE COURT:  Just state your name, please, before you

19 speak.

20          MR. GORDON:  George Gordon on behalf of the

21 plaintiffs.

22          Your Honor, Actelion has asked to stay discovery for

23 a fairly simple and straightforward reason, and that is that

24 the underlying dispositive motion in the case really asks the

25 Court to resolve a fundamental threshold question, and that

1    is whether Actelion has an obligation under the circumstances

2    alleged by the counterclaim plaintiffs to deal with those

3    plaintiffs.  The Court's answer to that question we believe

4    should end this case; at the very least, it will shape the

5    way the case will move forward, but we believe that the

6    motion will actually obviate the need for any discovery.

7         And I think the cases cited in both sides' briefs

8    make clear one thing and that is that such a stay is well

9    within the discretion of the Court.  We are not arguing that

10   there is some per se right to a stay based on a dispositive

11   motion, we understand that the character of the motion may

12   bear on the Court's exercise of discretion.  And if you look

13   at the cases cited in the opposition to our motion by the

14   counterclaim plaintiffs, I think, you know, fundamentally

15   they stand for the principle that courts do sometimes

16   exercise the discretion not to stay discovery based on

17   circumstances that are not present in this case.

18        THE COURT:  Well, let's speak a little bit about

19   those circumstances.

20        MR. GORDON:  Sure.

21        THE COURT:  You filed the complaint for declaratory

22   action?

23        MR. GORDON:  Correct.

24        THE COURT:  How soon from the filing of the

25   complaint did you move for the stay?

6

1           MR. GORDON:  We moved for the stay shortly after

2    receiving -- I guess it was in January, your Honor, when we -

3    - we filed the complaint in September and moved for the stay

4    in January after receiving the counterclaims.

5           THE COURT:  All right.  And there was -- I mean,

6    this issue was discussed at the initial -- what was the

7    initial conference, right?

8           MR. GORDON:  Yes, your Honor.

9           THE COURT:  So there was no scheduling order in

10   place because we've had this pending motion?

11          MR. GORDON:  Correct.

12          THE COURT:  Okay.  There's argument by defense

13   counsel concerning prejudice to the defendant; can you

14   address that argument?

15          MR. GORDON:  Sure.  I think the argument -- and our

16   response is twofold on the prejudice issue.  First, it's --

17   you know, prejudice, the issue of prejudice is one of the

18   things that used to be weighed in the exercise of discretion,

19   it's one of the factors.  I think the first issue to keep in

20   mind is that the return date on the underlying dispositive

21   motion is right around the corner, it's April 1.  I don't

22   presume to know on what schedule may want to hear argument,

23   whether the Court is going to want to hear argument or decide

24   the dispositive motion, but I would not expect this is a stay

25   of potentially indefinite duration, as was the case in many

1    of the stays that were at issue in the cases that the

2    defendants cite.  You know, this is a far cry from a case,

3    for example, your Honor, where there is a stay pending in an

4    underlying criminal investigation.

5         THE COURT:  Well, we -- you could say that's a

6    different type of circumstance.

7         MR. GORDON:  So I think it bears on prejudice, your

8    Honor, because it bears on the potential duration of the

9    stay.

10        THE COURT:  As I would agree in a stay pending a

11   reexamination.

12        MR. GORDON:  Correct.

13        THE COURT:  Where we have a limited time period.

14        MR. GORDON:  Correct.

15        THE COURT:  And I guess that's really going to be up

16   to the District Judge.

17        MR. GORDON:  It's a limited time period.  I think

18   also when you weigh the prejudice as against the time that

19   had elapsed before these issues were brought to the Court's

20   attention, which were brought to the Court's attention by

21   Actelion --

22        THE COURT:  Now, can you flesh that argument out?

23        MR. GORDON:  Sure.  Apotex I believe first requested

24   samples of Tracleer in January of 2011 and those -- those

25   requests were not responded to by Actelion, that's accurate.

8

1  But we heard nothing from Apotex again on those requests for
2  about 17, 18 months until June of 2012 when counsel for
3  Apotex reached out to Actelion once again.  We engaged in
4  discussions at that point to see if the issue could be
5  resolved and we were unable to resolve it, which led to
6  Actelion, because Actelion wanted its rights to be declared
7  by the Court here, to file the action for declaratory
8  judgment.  So there that's, you know, 18 months during which
9  nothing was done with respect to the request for samples.  So,
10  from Actelion's perspective, you know, the cry of urgency and
11  prejudice now rings a bit hollow, particularly in light of
12  the fact that we're dealing with the stay of temporary
13  duration.
14      And I think, you know, weighed against that
15  prejudice is the prejudice to Actelion of having to engage in
16  discovery in a case that we believe, for the reasons
17  expressed in our dispositive motion, is not meritorious and
18  should not have been -- we should not have to be here
19  litigating these issues.
20      THE COURT:  All right, let's talk about that a
21  minute.  Because the factors include prejudice, although
22  sometimes the Court looks at prejudice to one side and not
23  the other, I'm going to examine prejudice to both sides when
24  I examine the factors.  So the defendants take exception to
25  any prejudice to the plaintiff in the idea that there was a

1    phase discovery outlined and that why stay discovery now if

2    we could just begin with written discovery, wouldn't that

3    lessen the impact of any, quote, "prejudice," quote, to the

4    plaintiffs?

5            MR. GORDON:  Well, the phase discovery, as I

6    understand it, as proposed by the defendants, was not merely

7    kind of an exchange of written discovery, what it involved

8    was document production of certain categories of hard copy

9    documents, as well as, you know, other forms of

10   interrogatories and written discovery.  What would really be

11   -- as I understand the proposal, what might have been put off

12   were depositions and electronic discovery.

13           Now, it raises a number of questions in terms of,

14   you know, there's a lot packed into even hard-copy document

15   discovery.  I mean, hard-copy document discovery requires a

16   search of files.  It's not clear from the proposal whether or

17   not the first phase would include non-e-mail electronic

18   discovery.  So if I have a document that's on a server, it's

19   not an e-mail but it's a memo, is that hard-copy discovery or

20   not?  Would we have to search twice effectively?  I mean, you

21   know, phase discovery sounds on its face like it can save

22   expenses, in some instances it can actually be more

23   burdensome because it requires duplicative searching.  So we

24   would have to search the files of the particular custodians

25   in Phase 1 for certain hard-copy documents and then perhaps

1   again in Phase 2 for e-mails and electronic documents.  So

2   even a phase discovery process, your Honor, in the first

3   phase as I understand being proposed by the defendants, could

4   be quite costly and expensive.  And it's not just the

5   financial cost, it's the distraction of management time and,

6   you know, other non-financial burden that goes along with

7   engaging in discovery in complex litigation like this one.

8          THE COURT:  And that is the prejudice to your

9   client?

10         MR. GORDON:  Yes, your Honor.

11         THE COURT:  Okay.  Anything further?

12         MR. GORDON:  I mean, I guess in -- you know, we do

13  not believe, your Honor, that you need to decide effectively,

14  as the defendants suggest, the underlying dispositive motion.

15  We believe that the character of the motion is one that is

16  dispositive, comprehensive.  We're not complaining -- if you

17  look at some of the cases that are cited in the defendants'

18  brief, the Coca-Cola Bottling Company of Lehigh is one for

19  example where the court looked at the motion to dismiss and

20  said, you know, you're really moving to dismiss on technical

21  pleading defects; this can be fixed, so it may not be

22  dispositive.  This motion is dispositive and we would suggest

23  that the Court be guided by the approach the Court took in

24  the Wiessman v. Meta (ph.) case where the Court did take a

25  look at the motion to dismiss in that case, not on the

1   merits, but to confirm that it would indeed be dispositive if

2   decided in the defendant's favor and decided on that basis,

3   along with the definite duration and what the Court believed

4   would be a relatively short duration of the stay, and granted

5   the stay.

6           And here, I think just as context, it's important to

7   understand that the dispositive motion does raise what is the

8   request for fairly extraordinary relief from the counterclaim

9   defendants here in forcing Actelion to actually sell samples

10  to them against their will.  I mean, that -- what hangs in

11  the balance is a fairly sacrosanct commercial freedom to

12  decide with whom one does business and under what

13  circumstances that right can be circumscribed.  And just to

14  counter one impression I think created by the briefings that

15  is not accurate, this is not -- we're not talking about

16  chewing gum here, your Honor, this is not a simple sale of a

17  product.  What goes along with the sale of this product, the

18  defendants themselves acknowledge that these are products,

19  Tracleer and Zyveska (ph.), that have serious safety

20  concerns, which is why the FDA required restrictive-

21  distribution plans.  Their response to that is, well, we've

22  told Actelion we can handle it, don't worry about it.

23  Actelion is not required and frankly can't just rely on that.

24  So, in addition to a sale, we're talking about efforts that

25  would include confirming the defendants' ability to rely

1   on -- or the ability to take care of the safety issues and

2   ongoing monitoring of that ability during the testing, which

3   does involve the administration of these products to

4   patients.

5         So I just want to put that in context, put the

6   request for stay in a context of the nature of the issues

7   that are being dealt with in the dispositive motion.

8         THE COURT:  Okay.  So you've addressed the factors

9   of prejudice and the status of the dispositive motion.  Are

10  there any other factors you think the Court should be

11  considering in determining whether a stay is appropriate?

12        MR. GORDON:  No, I think, your Honor, it really

13  hangs on the nature of the dispositive motion and the

14  prejudice to Actelion in allowing discovery to move forward,

15  as well as really the absence of prejudice to the defendants

16  of a stay of the type that we're requesting.

17        THE COURT:  And you would agree that it's your

18  burden under Rule 26(c) to demonstrate good cause for the

19  stay?

20        MR. GORDON:  Yes, your Honor.  I don't have an issue

21  with that, we believe that we've demonstrated that.

22        THE COURT:  Anything further for now?

23        MR. GORDON:  Nothing, your Honor.

24        THE COURT:  All right, thank you.

25        From defendants?

1          MR. GOELMAN:  Thank you, your Honor, Aitan Goelman

2     for Apotex.

3          I want to begin with something that Counsel for

4     Actelion said.  He said that the parties recognize that the

5     Court has discretion here to go either way on the motion for

6     stay and certainly we wouldn't argue that there's no

7     discretion on the part of a judge to grant motions for stay

8     of discovery; that discretion, however, is cabined by what

9     the legal standard is.  And in addition to the fact that

10    Actelion has to -- has the burden for showing good cause, the

11    case law in this district is pretty clear that motions for

12    stay of discovery are disfavored and that there are two

13    prongs that the opposing party has to meet in terms of their

14    burden.  They have to show clearly and unmistakably that they

15    can win their dispositive motion, there's only one way to go.

16         THE COURT:  What's the case that supports that

17    position that they have to demonstrate clearly and

18    unmistakably that the plaintiff will prevail on the motion?

19         MR. GOELMAN:  Castro v. Sanofi Pasteur, it's

20    District of New Jersey, Magistrate Judge Hammer, 2012.

21         THE COURT:  All right.  What does the Third Circuit

22    have to say about that though?  What does the Mann case say?

23    Doesn't that give me as the Magistrate Judge discretion in

24    looking at the issue of stay and didn't the Third Circuit

25    affirm a stay of discovery?

14

```
 1            MR. GOELMAN:  I think that the Third Circuit did
 2   affirm a stay of discovery there, I think that the facts of
 3   that case are distinguishable.  And certainly, you know, as I
 4   said in the beginning of the argument, we're not arguing that
 5   the Court does not have discretion.  I think that the
 6   standard in this district though is that it's a pretty heavy
 7   burden for the party moving for a stay of discovery to meet.
 8            THE COURT:  Well, let me couch my question in this
 9   way.  There are a couple cases from Magistrate Judges that
10   have denied stays and then there are cases that have granted
11   stays in other districts, and we have the Third Circuit
12   saying, yes, a stay may be appropriate.  So, as I view it, I
13   have discretion and I have to look at the various factors.
14   And the plaintiffs' counsel's argument is it's very fact-
15   specific; look at the nature of the dispositive motion, look
16   at the time table, look at the prejudice.  Isn't that
17   accurate, isn't that what I'm supposed to be examining?
18            MR. GOELMAN:  Yes.
19            THE COURT:  Okay.  So why don't you, if you can,
20   address those specific issues on prejudice to defendant if I
21   grant a stay.
22            MR. GOELMAN:  Okay.
23            THE COURT:  Whether you accept there's any prejudice
24   to the plaintiff or not and the nature of the dispositive
25   motion.  Because I'm not sure the standard is I have to find
```

1   whether the dispositive motion is clearly and unmistakably

2   correct, because wouldn't that in effect require me to decide

3   the dispositive motion?

4           MR. GOELMAN:  It requires you to evaluate the

5   dispositive motion and try to make a judgment about how

6   likely it is to be granted.  I think that that is one part of

7   the test that courts faced with a motion for a stay of

8   discovery are supposed to perform.

9           THE COURT:  Okay.

10          MR. GOELMAN:  But in terms of prejudice, let me just

11  address that first, because the Court said during the

12  colloquy with Counsel for Actelion that, you know, the Court

13  is going to consider prejudice to both parties here.  We

14  agree you should consider prejudice to both parties, but we

15  think that you also should consider prejudice to others, to

16  people who aren't parties here; to the people who are paying

17  super-competitive prices for Actelion's drugs for every day,

18  to the third-party insurers, to the United States Government,

19  to the people who are going to pay during the pendency of

20  this case, you know, hundreds of millions of dollars

21  additionally because of Actelion's maintenance of a monopoly

22  in these two different drugs.  And we would -- I don't know

23  if the Court has had a chance, you said that you've read the

24  submissions of the parties, I don't know if you've had a

25  chance to read the submissions by the two amici that were

1    filed --

2              THE COURT:  Well, they were filed last night?

3              MR. GOELMAN:  They were filed last night.

4              THE COURT:  No, I have not had an opportunity to

5    examine that.

6              MR. GOELMAN:  One of the amici is the FTC and the

7    FTC -- you know, they are typically very guarded and cautious

8    and I don't want to say mealy-mouthed, because that's

9    pejorative, but they're very -- they're not partisan -- that

10   they take a very strong position in this case that the facts,

11   if proven, as alleged by the counterclaim plaintiffs and

12   defendants here do make out Section 2 and Section 1 claims

13   under the Sherman Act.  So I think that that militates very

14   strongly in favor of skepticism that Actelion's dispositive

15   motion is going to be granted.

16             And the FTC's amicus also talks about how fact-

17   intensive Section 2 evaluation is.  This is not, as Actelion

18   would have the Court believe, only a legal question.  Clearly

19   there are legal questions that Judge Hillman will have to

20   decide in considering the dispositive motion, but there's

21   also factual questions in the case and every month of delay

22   that Actelion buys itself here is another month that it can

23   maintain its monopoly on the far side of the expiration of

24   the patent.

25             And I want to respond in particular to one thing

1    that Counsel for Actelion said, because I really think it

2    shows, and I hesitate to use a Yiddish word in Federal Court,

3    but chutzpa.  The idea that Apotex because it's asked for

4    these samples in January of 2011 and then didn't institute a

5    law suit until it was sued by Actelion a year and a half

6    later doesn't really care about speed is just not true.  And

7    it's, first of all, factually inaccurate.  After Apotex sent

8    a letter to Actelion in January, 2011 and got no response

9    from Actelion, it sends another letter in April, 2011 and

10   again got no response from Actelion.  Then it tried to figure

11   out a way to bring its ANDA using a Canadian version of

12   Tracleer.  And eventually the FDA said, no, you have to use

13   the American RLD.

14          So the idea that Actelion, which has bought itself

15   an extra 18 months by refusing to respond even to these

16   letters demanding Tracleer until Apotex got outside counsel

17   involved, can then later sue and turn and point to the delay

18   as evidence that Apotex doesn't really care about a delay is

19   frankly offensive and inaccurate.

20          THE COURT:  Can you just while we're on the topic of

21   the time line flesh out for me the argument about, if you

22   were -- I just want to understand how the process works -- if

23   the defendant is able to get a sample, what's the time line

24   generally before you would be in a position to file an ANDA?

25          MR. GOELMAN:  Well, you have to perform these

1   bioequivalence studies with the RLD and --

2        THE COURT:  Can you say that and spell that word

3   again for the record, because I'm not sure I heard the bio --

4        MR. GOELMAN:  Bioequivalence --

5        THE COURT:  Bioequivalence, okay.

6        MR. GOELMAN:  -- b-i-o equivalence.  You have to

7   take the drug to the RLD and you have to show certain things

8   in a lab, like the rate of absorption, and that your generic

9   alternative is the same, it's bioequivalent to the RLD.  And

10  after you do that, only after you do that can you file the

11  ANDA, the Abbreviated New Drug Application.  And then from

12  the time that you file the ANDA to the time that the ANDA is

13  actually granted, assuming it would be granted, can be, you

14  know, at least two years, maybe 30 months.

15        So right now they have a patent on Tracleer, just to

16  focus on that one drug, and that patent I think expires in

17  November, 2015.  Even assuming the validity of that patent --

18  and the Court should recall that in patent litigation over

19  brand name drugs, often the patent is held to be invalid or

20  not infringed by the generic competitor -- but even assuming

21  that the patent is valid, that will run in November, 2015.

22  So every month of delay that they buy now by preventing

23  potential generic competitors from getting access to drugs

24  that they need for bioequivalence is another month later that

25  the process is pushed down the road.  Because the FDA is

1    going to take the time that the FDA needs to evaluate the

2    ANDA, it doesn't happen overnight.

3           So when we say that, you know, we are prejudiced by

4    a stay of discovery, we mean that, you know, the process --

5    once the dispositive motion is decided and presumably denied,

6    these discovery steps are going to have to take place in any

7    case and we wanted to get started on that now.  And the

8    suggestion of phase discovery is a compromise proposal that

9    we came up with because Actelion resisted any discovery at

10   all, wanted a stay.  If as Counsel appeared to argue that

11   there are certain ways that phase discovery is actually more

12   burdensome or more expensive than doing everything in one

13   fell swoop, we're happy to do non-phase discovery as well.

14   We came up with the phase proposal because we thought that

15   delaying e-discovery, which some courts have cited as being

16   expensive, and by delaying depositions, which we all know are

17   expensive, that we would allow the first phase to take place

18   without too much burden on the parties.  And Actelion, for

19   them to -- you know, they have this monopoly on a drug that

20   makes them a billion dollars a year and for them to turn

21   around, sue us and then ask for a stay of discovery because

22   they don't want to spend the money to answer some

23   interrogatories and provide some documents I think rings a

24   little bit disingenuous when they claim that they want the

25   case to proceed expeditiously.

1          THE COURT:  What is the compromise provision?  I

2     know that at first -- your first position would be open

3     discovery of all discovery, but as a compromise you've agreed

4     or suggested in the papers to phase discovery.  Can you

5     describe exactly what you had in mind in that regard?

6          MR. GOELMAN:  Sure, your Honor.  Phase one would be

7     written discovery, so your interrogatories and provision of

8     core documents.  And, you know, that obviously begs the

9     question of what those core documents are.  We believed that

10    Actelion has already made a production to the FTC of relevant

11    documents.  So clearly, if that's true, they could just, you

12    know, burn a copy onto a CD and provide it to us without

13    incurring any additional costs really.  But we would work out

14    categories of what we consider to be core documents,

15    including communications with distributors, communications

16    with the FDA in preparation for the REMs, how the REMs -- you

17    know, these are the restrictions on the use of particular

18    brand drugs, how they were arrived at, things that probably

19    have already been segregated into files at Actelion just

20    because of the regular course of business.

21          And, you know, if there are requests, specific

22    requests made that Actelion contends are overly burdensome,

23    and we meet and confer and we can't work it out, at that

24    point they always have the option to come to the Court for

25    protection as they would in the normal course of the case

1   where they think that, you know, the equities weigh on their

2   side that they shouldn't have to respond to a particular

3   discovery request, as opposed to just a blanket prohibition

4   on conducting any discovery at this point.

5              THE COURT:  Okay.  What about the plaintiffs'

6   argument about prejudice to them, to it --

7              MR. GOELMAN:  Prejudice to the plaintiffs?

8              THE COURT:  The plaintiffs, two plaintiffs,

9   prejudice to the plaintiffs.

10             MR. GOELMAN:  About responding to discovery?  Well,

11  you know, if we -- first of all, I think that for them --

12  they filed suit, okay?  So some -- in many of the cases where

13  you're dealing with discovery stays that are granted, they're

14  by -- brought by defendants who, you know, were dragged into

15  court and they don't want to spend a whole lot of money

16  defending a case when they think they're going to win on a

17  dispositive motion.  Here, they sued us.  So I think that

18  that weighs on the equities.  And I do not believe that,

19  especially if we follow this compromise proposal, phase

20  discovery, that the burden is going to be undue.  Certainly

21  Actelion has made no showing, as is their burden, that

22  complying with this discovery plan would create undue

23  burdens.

24             THE COURT:  And in addition to the prejudice -- you

25  articulated the prejudice to the defendants and you've

1   indicated you assert prejudice to third parties for the

2   inability to process and move forward with an ANDA and then

3   creation of a generic drug?

4           MR. GOELMAN:  Correct.

5           THE COURT:  And you've articulated what you ascribe

6   as lack of prejudice to the plaintiffs?

7           MR. GOELMAN:  Correct.

8           THE COURT:  Can you continue with your argument,

9   because I think I interrupted you, on the standard of what I

10  am to be examining with respect to the dispositive motion.

11          MR. GOELMAN:  Okay.  Well, I think that the Court

12  should take a look at the dispositive motion and see if there

13  is -- you know, the standard I believe in this district is

14  that, you know, unmistakable, that there could be only one

15  outcome and that is success for the dispositive motion, and

16  that if the Court looks at the dispositive motion and finds

17  that, you know, indeed there could be more than one outcome,

18  that that in itself is a deal breaker for their motion for

19  stay of discovery.  And as a matter of fact in this case, I

20  think that if a reader, a neutral, fair reader of the briefs

21  on the dispositive motion would conclude that, to the extent

22  that there is only one unmistakable outcome of this motion,

23  it is that Actelion would lose, that their dispositive motion

24  would be denied.  And, again, I think the FTC amicus is

25  telling in this regard, because they don't care about any of

1   us, they don't have a dog in the fight in terms of wanting

2   one or more of the generic defendants here to make money,

3   they are learned counsel on the antitrust laws and their

4   concern is protecting the consumer from predatory,

5   monopolistic behavior.  And according to the FTC -- they're,

6   you know, much more of an honest broker than either of the

7   parties before this Court -- they don't believe that

8   Actelion's motion should be granted or will be granted.

9          THE COURT:  Do you agree with plaintiffs' Counsel

10  that if the motion were to be granted this case would be

11  over?

12         MR. GOELMAN:  Yes.

13         THE COURT:  Okay, let me see if I have any more

14  questions.

15         (Pause.)

16         THE COURT:  Okay, thank you.  Is there anything

17  further?

18         MR. GOELMAN:  Just one thing.  In terms of, you

19  know, the hypothetical that Counsel for Actelion proposes is,

20  one is they win the dispositive motion and the other one is

21  that the dispositive motion is decided by the Court in a way

22  that somehow narrows discovery, so that we would benefit from

23  the guidance of that decision before starting discovery, our

24  core discovery request, the phase one materials, they would

25  be relevant in any case.  As long as we survive the

1   dispositive motion, those are materials that are going to be,

2   you know, centrally relevant to the litigation.  So it's not

3   like we need to wait for the decision by Judge Hillman in

4   order to proceed with those targeted, focused, narrow

5   discovery requests.

6           THE COURT:  All right, thank you.

7           MR. GOELMAN:  Thank you.

8           THE COURT:  Any reply?

9           MR. GORDON:  Just briefly, your Honor --

10          THE COURT:  Sure.

11          MR. GORDON:  -- if I may?

12          THE COURT:  Oh, I'm sorry, did other defense counsel

13  want to argue?

14          COUNSEL:  We can talk while he argues and then if he

15  has anything additional to say on that point, we're fine with

16  that.

17          THE COURT:  Okay.

18          MR. GORDON:  George Gordon for the plaintiffs, your

19  Honor.  I just want to respond to a few points that Counsel

20  made.

21          I mean, first of all, there's rhetoric in the brief

22  and there's rhetoric in the argument about parties that are

23  out there paying supposedly super-competitive prices for

24  Actelion's products, I just want to make sure that the

25  context and record is clear.  Even if Actelion had provided

1    samples back in January or April of 2011, this is a patented

2    product.  Okay?  There are a number of hurdles.  It is likely

3    and I would say, you know, virtually certain, there would not

4    be an alternative product on the market today.

5              THE COURT:  Well, let's just play that out.  Let's

6    assume right now there's a sample that's provided, maybe you

7    lose the motion and the defendants are able to develop the

8    testing that they need to do, they file their ANDA, then you

9    would file suit and we'd have the stay, is that --

10             MR. GORDON:  We would have an automatic -- correct,

11   we would have a stay.

12             THE COURT:  And then the patent will expire?

13             MR. GORDON:  Correct.

14             THE COURT:  Okay.

15             MR. GORDON:  Yeah, that would have happened back --

16   I just want to point out that there's no one -- today we are

17   not at a point in time where there would have been some

18   alternative on the market, because even if that had started

19   back in January of 2011 and they had been able to develop a

20   bioequivalent product and they had filed an ANDA, we would be

21   within the duration of the 30-month stay today.

22             THE COURT:  Right.  So isn't the 30-month stay

23   regardless going to dovetail with the expiration of the

24   patent?  If there's a 30-month stay.  I think we've only got

25   the time line of one of the patents at issue.

1          MR. GORDON:  Correct, on Tracleer.  On Zyveska, the

2   patents expire, the last-to-expire patent is in July of this

3   year I believe.

4          THE COURT:  Okay.

5          MR. GORDON:  And Tracleer is November of 2015.

6          I also do want to respond -- I mean, you asked if

7   the FTC filed an amicus brief, I don't believe that should

8   bear at all on the Court's decision on the motion to stay.

9   The FTC, I don't want to suggest they're not grounded as was

10  observed by defense Counsel, but I will say they are very

11  active in this area.  They have filed amicus briefs with

12  increasing frequency on behalf of generics in a variety of

13  cases in the district court.  So the fact that they -- just

14  the mere fact that they have filed an amicus brief is not in

15  any way a surprising event.  And I will also say we have not

16  -- let me make it clear, there was some suggestion we

17  produced documents to the FTC, we have not produced any

18  documents to the FTC.

19         THE COURT:  In the present motion before the

20  District Court that was filed last night was leave to file

21  the brief.

22         MR. GORDON:  And there was a brief attached to it as

23  well, your Honor, a proposed --

24         THE COURT:  And will you be opposing the --

25         MR. GORDON:  We will not be opposing that, your

1    Honor.

2            THE COURT:  And you'll send a letter to the District

3    Judge on that?

4            MR. GORDON:  Yes, your Honor.

5            THE COURT:  Okay.

6            MR. GORDON:  And we had told -- counsel for the FTC

7    had called and we had confirmed that we would not be

8    objecting, and the same is true with the Generic Pharma brief

9    that was filed, your Honor.

10           THE COURT:  So what's left in the Generic -- in the

11   other brief that was filed?

12           MR. GORDON:  The underlying brief, the dispositive

13   motion?  We have -- we have a reply due on March 22nd, your

14   Honor.

15           THE COURT:  And would that be the end of the

16   briefing?

17           MR. GORDON:  I imagine so, your Honor.  No, we had

18   just -- we have just received ourselves last night the amicus

19   briefs, so I say that having only looked -- we had the chance

20   to look at them quickly, but I do believe today that the

21   March 22nd brief will be the last brief filed.

22           THE COURT:  Well, what about the defendants'

23   argument that the phase discovery really alleviates any

24   alleged prejudice to the plaintiff if the requests are -- if

25   you play it out, you'll have 30 days to respond to any

28

1  requests anyway.  Maybe the motion will have -- you know, the

2  briefing will be completed on the motion by then and I'm sure

3  there will be objections to the scope of the request.  So by

4  the time you end up actually responding to this, quote,

5  "limited core document request," any prejudice is very minor,

6  if at all.

7          MR. GORDON:  The problem, your Honor, of even going

8  through the process of written -- the process of receiving,

9  analyzing, objecting to discovery requests and having to -- I

10  mean, if we're going to be put in that position, we're going

11  to have -- I think we're going to be in the position of

12  having to serve discovery going back the other way, it is not

13  without substantial costs on its own.  When we receive the

14  requests, I mean, part of the thing we have to engage in as a

15  recipient of a document request in deciding how to respond

16  and what we're going to object to and what we're not going to

17  object to is going through a process of -- of beginning the

18  process of searching for the documents that are called for,

19  figuring out what's available, where it is, where would the

20  burden lie.  It's not as simple as reading a document and

21  coming up with a legal position as to whether or not the

22  request is objectionable, it does require scratching beneath

23  the surface and doing investigation into the client's files

24  and documents in light of the requests.

25          The other thing I wanted to respond to and I think

1    it relates to your question, your Honor, is Counsel's

2    suggestion that the Court's decision -- if I understood their

3    argument, that the Court's decision on the dispositive motion

4    wouldn't affect the type of documents being sought in the

5    initial phase.  So if we were to lose the initial motion --

6    dispositive motion rather, then we would still have to

7    produce no matter what the Court did in that decision, we

8    would still have to produce the documents that were called

9    for in their first phase.  First of all, obviously if the

10   Court grants our motion, which we believe is likely, then we

11   won't have to produce anything or engage in any of this

12   process.  Secondly, one of the things that Counsel mentioned

13   in that litany of documents that they would be looking for

14   are documents that underline the creation of the REMS

15   program, and this goes to the kind of nature of the issues at

16   issue in the underlying dispositive motion.  This case is not

17   about the scope or the elements of Actelion's REMS program.

18        The defendants have in their opposition to the

19   motion tried to suggest that this case goes beyond just a

20   refusal to deal and includes a broad scheme, including the

21   creation of the REMS program and the elements of safe use

22   that are contained in the REMS program.  The problem with

23   that, your Honor, is if you look at their underlying

24   pleadings, there are no facts alleged which if true would

25   establish that the elements of safe use in Actelion's REMS

1    product -- REMS program are not reasonably necessary for

2    patient safe -- patient safety or that Actelion has used

3    somehow the REMS program for purposes that are not connected

4    with patient safety.  The REMS program is a red herring.

5    What this is about, what this case is about -- so documents

6    about the creation of the REMS program, the basis for the

7    elements of safe use in the REMS program, there are no

8    allegations that any of those -- the elements of safe use are

9    not necessary for patient safety.  So that's all a red

10   herring.

11          What this case is really about, and this is why we

12   brought the case, it's about a simple legal issue, which is

13   does Actelion have the obligation to sell product and do all

14   the ancillary things that go along with selling products in

15   terms of monitoring the safe use of that product, do they

16   have an actual legal obligation to do so against their will?

17   It's a simple legal question.  And the fact that we filed a

18   lawsuit -- you know, Counsel seemed to suggest that since we

19   filed a lawsuit we should have to engage in discovery --

20          THE COURT:  Well, I think the argument is, if you

21   file a lawsuit, you know you're going to have discovery.

22   It's disingenuous, I think was the term, to file a lawsuit

23   and then argue that you're being prejudiced because you have

24   to engage in discovery.

25          MR. GORDON:  No, because we filed the lawsuit to

1    enforce our legal rights and to seek a declaration of our

2    legal rights on an issue that we believe can be decided as a

3    matter of law.

4            THE COURT:  So --

5            MR. GORDON:  We had to come to court to get that

6    relief, but it's a legal issue,  and that's why we filed our

7    motion for judgment on the pleadings.

8            THE COURT:  So it's the declaratory-relief aspect of

9    the complaint that you believe differentiates this case from

10   other cases for stays?

11           MR. GORDON:  Correct.  In terms of to the extent

12   that it would be relevant that Actelion initiated this

13   lawsuit, we initiated the lawsuit for declaratory relief on

14   what we believed to be a legal issue.

15           THE COURT:  What about the defendants' argument that

16   there is case law in this district that requires the Court to

17   find the dispositive motion to be the standard articulated in

18   Judge Hammer and Judge Schneider's opinions?

19           MR. GORDON:  I think -- I think that the defendants

20   read far too much into that language, because it would -- if

21   taken to the conclusion that they take from it, it would

22   require the Magistrate Judge in this case, you, to

23   effectively rule on the underlying motion.  And I think if

24   you look at those cases, that language arose in cases where

25   there were other factors and elements that were at play that

1    went into the court's exercise of discretion.  For example in

2    the Castro case, if I'm not mistaken, I believe discovery had

3    already begun in that case.  If you look at the Lipitor case,

4    that case had been pending for well over a year when the stay

5    issue had come up.  If you look at the Lehigh Bottling case,

6    for example, that issue was -- which may not have been from

7    this district, I think that may have been from the Middle

8    District of Pennsylvania, but in that case the motion to

9    dismiss wasn't truly dispositive.

10         So I think -- I don't think you can look at that

11   language separate and apart from the full context of the case

12   in which it erupts.  And I think Mann in the Third Circuit

13   has made it clear that the District Court does have

14   discretion in these cases to weigh the factors and enter a

15   stay when it would be appropriate and does not have to rule

16   on the stay to do so -- I'm sorry, rule on the dispositive

17   motion to do so.

18         THE COURT:  Do you agree with the underlying

19   principle however that stays are disfavored?

20         MR. GORDON:  No, I don't disagree that stays are

21   disfavored and should only be entered in cases where good

22   cause has been shown, but I believe this case is -- I think

23   this case frankly is tailor made for exercise of discretion

24   in that way because of the nature of the underlying

25   dispositive motion, because of the nature of the legal right

1    being defended here and because of the -- what should likely

2    have been the relatively short duration of the stay.

3            THE COURT:  All right, thank you.

4            Any further replies?  Oh, I'm sorry, are -- okay.

5            MR. GORDON:  I am finished, your Honor.

6            THE COURT:  All right, thank you.

7            Any further reply?

8            MR. GOELMAN:  Just one very, very brief --

9            THE COURT:  Sure.

10           MR. GOELMAN:  -- reference to the Third Circuit's

11   opinion in Mann, your Honor.

12           THE COURT:  Sure.  Let me just ask you again that

13   you state your name.

14           MR. GOELMAN:  I'm sorry, Aitan Goelman for Apotex.

15           THE COURT:  Okay.

16           MR. GOELMAN:  And I'm referring to Page 239 of Mann

17   where the court says, "As laid out above, none of Mann's

18   claims entitle him to relief."  So even the court in Mann

19   acknowledged that a consideration of the merits of the

20   underlying dispositive motion was relevant and in that case

21   they found that essentially the party asking for the stay of

22   discovery was going to prevail in the underlying motion.

23           Counsel for Actavis wanted to address and perhaps

24   correct one thing that I had said in my initial colloquy with

25   the Court.

1          THE COURT:  Okay.  Is there any objection?

2          MR. GORDON:  No, your Honor.

3          THE COURT:  All right, thank you.  If you can just

4    state your name, please?

5          MS. REEVES:  Amanda Reeves on behalf of Actavis

6    Elizabeth.  Mr. Aitan was arguing on behalf of all defendants

7    and I am doing the same.

8          There was just one point, this is more a point of

9    correction than -- more a point of clarification than

10   correction.  At one point the Court asked if resolving this

11   motion would end the case.  I wanted to clarify that there

12   are two motions pending, there is a 12(b)(6) motion and a

13   12(c) motion.  And what the plaintiffs have done here is very

14   strategic and sophisticated.  We were going to file a Section

15   2 monopolization claim and they unilaterally sought a

16   declaratory judgment action based on one right, which is the

17   right to refuse to deal.  So they have now sought to make the

18   entire case about whether that one right exists.  By doing

19   that, they have attempted to sort of change the dialogue and

20   suggest that our allegation that they're engaged in

21   exclusionary conduct is not the issue.  That is misleading

22   and it isn't correct and it is belied by our pleadings.

23         During his discussion with the Court, Mr. Gordon

24   suggested that there were not allegations in the complaint

25   that would support allegations of exclusionary conduct.  On

1   Page 23 of defendants' opposition brief, we explain that the

2   exclusionary course of conduct is including elements that go

3   well beyond the refusal to deal and include appropriate cites

4   to the pleadings that support those allegations.  So

5   therefore the suggestion that there is one legal issue in

6   this case that resolves the entire case is incorrect.  If the

7   Court, however, were to -- and this is what I believe Mr.

8   Goelman was referring to -- grant the motion to dismiss for

9   failure to properly plead sufficient allegations under

10  12(b)(6), that would of course dismiss the case, but at that

11  point we may seek relief to replead.

12          THE COURT:  Okay.  So there's a 12(b)(6) motion

13  against your client on the counterclaim?

14          MS. REEVES:  Correct.

15          THE COURT:  And your counterclaim differs from the

16  other defendants' counterclaims?

17          MS. REEVES:  Exactly.  They do not match up

18  perfectly, correct.

19          THE COURT:  And you would be seeking leave to amend

20  your counterclaim to address any deficiencies if the District

21  Judge noted them?

22          MS. REEVES:  Potentially, correct.

23          THE COURT:  And what is the cause of action

24  specifically in your counterclaim?

25          MS. REEVES:  So we allege that the plaintiffs in

1    this case are engaged in the Section 2 exclusionary conduct

2    by, among other things, designing a REMS program that

3    precluded generic competitors from obtaining the Tracleer and

4    Zyveska samples, by entering into contracts with wholesalers

5    that prevented them from selling Tracleer and Zyveska to

6    potential competitors, by refusing to deal and by taking the

7    position that at no point will they ever be required to

8    provide samples, even after their patent expires.

9          THE COURT:  And each of those -- are they four

10   separate counts?

11         MS. REEVES:  Those are all elements of our Section 2

12   claim.  So the Third Circuit law, which the plaintiffs do not

13   cite in their motion, which is interesting because it is a

14   Section 2 case, but the Third Circuit Section 2 law is quite

15   clear, the LePage's decision and the ZF Meritor decision,

16   which are all in point one of our argument walk through the

17   standard, and those cases make clear that the Court should

18   not sort of parse through the conduct and look at one element

19   in light of a Supreme Court case that may be relevant say

20   that if -- if plaintiffs allege an exclusionary course of

21   conduct and the defendants come back by saying some component

22   of that may be permissible, that the whole case then at the

23   pleadings stage should be dismissed, the Court at that point

24   should look at whether under Section 2 the -- in this case

25   the defendants have alleged an anticompetitive course of

1    conduct under Section 2.  It's more looking at whether there

2    is an anticompetitive scheme.

3              THE COURT:  Okay.  So following up on the

4    clarification that you wanted to advise to the Court or state

5    to the Court, is it your position that if the plaintiff

6    prevails on the 12(b)(6) motion the case would not be over

7    because you would be looking to replead?

8              MS. REEVES:  Potentially.  We would need to discuss

9    that, but that is a possibility.  What I really wanted to

10   make clear is that if the Court were to decide the 12(c)

11   motion, the declaratory judgment motion, which the plaintiffs

12   have brought, that we do not take the position that that

13   would end the case.

14             THE COURT:  And why do you take the position it

15   would not end the case?

16             MS. REEVES:  Because we allege an anticompetitive

17   scheme comprised of many elements, so --

18             THE COURT:  So the --

19             MS. REEVES:  -- they're described on Page 23 of our

20   brief.

21             THE COURT:  So the refusal to deal with just one --

22             MS. REEVES:  It's just one component.  So they've

23   done several things to eliminate competition.

24             THE COURT:  Okay, thank you.

25             MS. REEVES:  Thank you.

1          THE COURT:  Any reply?

2          MR. GORDON:  Your Honor, if I may, because Ms.

3    Reeves did inject a few additional issues into the argument.

4          THE COURT:  Sure.  Just state your name, please.

5          MR. GORDON:  George Gordon on behalf of the

6    plaintiffs.

7          I just want to address quickly the notion that there

8    is a -- you know, a kind of multi-prong scheme alleged -- or

9    argued and that refusal to deal is only one of the issues.

10   The argument I think that I tried to articulate and explain

11   was that, yes, it is indeed true that plaintiffs have now in

12   their motion papers in the dispositive motion suggested that

13   this case is about more than a refusal to deal and have

14   alleged -- made conclusory arguments about schemes and

15   unreasonably broad REMS programs, but when you look --

16         THE COURT:  You said plaintiff, you mean

17   counterclaim plaintiffs?

18         MR. GORDON:  I'm sorry, counterclaim plaintiff.

19         THE COURT:  Okay.

20         MR. GORDON:  Thank you, your Honor.  But when you

21   look -- when you peel -- when you look behind the rhetoric,

22   as Twombly requires us to do, and actually look at what's

23   pled in the counterclaims, it's not there.  So the only well

24   pled, in the sense that there are alleged facts -- we don't

25   believe they state a claim, but the facts are there --

39

1     relates to refusal to deal.  There are no facts which if true

2     would support the other elements of the alleged, you know,

3     scheme.  It's just, you know, frankly, from our perspective,

4     kind of empty rhetoric and conclusory assertions, and that

5     would be part of what we were bringing to the Court's

6     attention in our reply brief.  So that's why this case is

7     really only about the refusal to deal despite the fact that

8     the plaintiffs are trying to broaden it, which is not

9     surprising because I don't -- because the law is what it is

10    on refusal to deal.

11            The other thing I want to make clear is that from

12    our perspective the arguments in the 12(c) and the 12(b)(6)

13    would dispose of the case on all aspects and would not --

14    would not lead one to replead.  We do not argue in any

15    aspects of our motion about technical pleading defects, our

16    motion goes to the character of the conduct that's alleged.

17    So for example, one of the things that Ms. Reeves' client

18    alleges that the others do not is that the -- they bring a

19    claim based on the distribution arrangements between Actelion

20    and its specialty distributors.  Our motion to dismiss and

21    our motion for judgment on the pleadings with respect to

22    those relationships goes to the character of those

23    relationships, it's not a failure of pleading, it's not a

24    pleading defect.  Our argument is, as a matter of law, those

25    relationships cannot be the basis of an antitrust claim.

40

1          So I just want to clarify that we're not -- you

2     know, our motion goes to the character of the allegations; if

3     it's denied, the case will proceed in whole or in part; if

4     it's granted, we believe the case will end and will not leave

5     room for repleading.

6          THE COURT:  All right, thank you.

7          Is there anything further?

8          MS. EUN:  Yes, your Honor, Eunnice Eun for Roxane.

9          Just to follow up on my codefendant's counsel's

10    point on the 12(c) motion.  In addition to the Section 2

11    claims that Ms. Reeves described, Roxane has also brought an

12    additional claim, a Section 1 claim, against Actelion here.

13    And so that, among the reasons that Ms. Reeves described,

14    would be another reason why if the 12(c) motion were granted

15    the case would not be over from our perspective.

16         THE COURT:  Is the motion directed to the Section 1

17    claim?

18         MS. EUN:  Yes, it is.

19         THE COURT:  All right, thank you.

20         MR. GORDON:  Your Honor, I just want to say I

21    misspoke, I misspoke when I said it was Ms. Reeves' client

22    that had brought the allegations based on the distributor

23    relationships, it was actually Roxane who had brought those

24    claims.  And so my remarks on that issue were meant to go to

25    that Section 1 issue.

1            THE COURT:  Anything further?

2            MR. GOELMAN:  Not from the defendants, your Honor.

3            MR. GORDON:  Nothing further from the plaintiffs,

4    your Honor.

5            THE COURT:  Well, thank you, Counsel.  I appreciate

6    you driving down here in a rainy day for this argument.  I'm

7    going to reserve decision because I want to give some thought

8    to the arguments that were raised today.  I thank you for the

9    very careful briefs and the argument today.  And I'm going to

10   close the briefing, I don't think any further briefing is

11   necessary.  Does anybody request that?

12           MR. GORDON:  The plaintiffs do not, your Honor.

13           MR. GOELMAN:  The defendants don't, your Honor.

14           THE COURT:  All right.  And I hope to issue a

15   decision shortly and I think that's all we'll do today.

16           Thank you.

17           ALL:  Thank you, your Honor.

18           THE COURT:  We are adjourned.

19           (Hearing adjourned at 10:49 o'clock a.m.)

20                                    *  *  *

CERTIFICATION

I hereby certify that the foregoing is a correct

transcript from the electronic sound recording of the

proceedings in the above-entitled matter.


s:/Geraldine C. Laws, CET          Dated 3/16/13
Laws Transcription Service